[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This vigorously contested dissolution action comes to this Court by complaint of the plaintiff Joan Tranchida (hereinafter plaintiff/wife) dated October 2, 1990, against CT Page 4271 Joseph Tranchida (hereinafter defendant/husband) wherein the plaintiff claims a dissolution of the marriage, custody of the minor child, support, alimony, counsel fees and other relief. The matter was claimed for the family relations trial list on April 15, 1991, after various pendente lite matters, and was assigned for trial before the Court on April 28, 1992, at Norwich. Both parties were present, testified on their own behalf, and were well represented by counsel at the trial.
The parties filed financial affidavits, custody affidavits and the required child support guidelines worksheet. On the day of the trial, the defendant was permitted by stipulation to file an answer and cross complaint in which the defendant admitted the allegations of the complaint requested a dissolution of the marriage, a fair and equitable property settlement and other relief.
The plaintiff offered evidence on her own behalf that supported the allegations of the complaint.
With regard to the causes of the breakdown of the marriage, the plaintiff claimed that the defendant's infidelity and violent behavior over a long period of time was responsible. She listed incidents which occurred when police were called as long as 17 years ago and other incidents within the last six months to one year. She testified that in October 1990, a restraining order was issued by the Superior Court as a result of threats of harm. On cross examination, the plaintiff admitted having also had an extramarital affair herself during the 22-year marriage. She acknowledged living with the defendant as husband and wife for 22 years before removing him from the family residence by a restraining order and instituting this dissolution action.
The plaintiff who is 44 years of age has completed a two year business college education. She worked almost continuously during the marriage except for a year when their child Tracy Tranchida was born in 1974. The plaintiff over the years has been a secretary for Connecticut Medical Services and the Yale Co-Op Store in New Haven. She has also been a secretary, a bookkeeper and a waitress. In addition, the plaintiff testified as to her participation in the family-run retail businesses in Niantic and Norwich over about a 13-year period of time when the parties jointly owned and operated Dairy Mart retail outlets. At their Dairy Mart business operations, the plaintiff took care of customers, rang the register, took care of lottery sales and banking including special banking for the lottery program.
The plaintiff testified that at the present time, CT Page 4272 she is unemployed but expects to receive state unemployment payments within the next week and has submitted an affidavit to the Court based upon the expectation of receiving unemployment compensation equivalent to $133 per week. She continues to look for employment after having been laid off from her receptionist job with a local doctor. There is a pendente lite order requiring the defendant to pay the plaintiff $65 per week for the support of the minor child, Tracy, who will reach her majority in about two weeks on May 13, 1992.
With regard to the family's assets, the plaintiff testified that the only asset they have besides their motor vehicles shown on the financial affidavit and the personal property contained in their residence is a house and lot at 21 Chris Drive, Uncasville, Connecticut. The plaintiff indicated this was the second house owned by the parties jointly. The first house on Driscoll Drive in Montville was purchased for about $20,000 with $2,500 being put down as a deposit. The plaintiff claims that the deposit came from her money. The defendant testified that the deposit was produced from joint savings of the parties. Some improvements were made to the house and while there is some dispute as to the source of the funds necessary to purchase materials for such improvements, it is clear that the defendant did much of the physical work with assistance from friends. The Driscoll Drive property increased in value and was sold to provide funds for the property at Chris Drive. The Chris Drive property was purchased for $105,000 in 1983. The parties rolled over about $50,000 from their sale of the Driscoll Drive property and obtained a $55,000 mortgage to finance the balance of the purchase price. The plaintiff continues to live in the jointly-owned property with the minor daughter, the defendant having been removed by previous order of the Court. The property has a present value of $140,000 based upon an anticipated offer through a real estate agency. The plaintiff's affidavit suggests a value of $150,000, but both the plaintiff and the defendant acknowledged in their testimony that if indeed a $140,000 order were made, they would be willing to sell the property for that amount. The property is encumbered by a mortgage in favor of the Farmers 
Mechanics Bank as well as a home equity second mortgage to the same bank. The parties stipulated during the trial that the first mortgage balance is $59,000 and the home equity loan balance is $7,000.
The plaintiff testified that her health, while permitting her to work throughout the marriage, is affected by her diabetic condition. She testified that she has had insulin shots every morning since she was about ten years old and has CT Page 4273 undergone surgery on her hands and also has undergone a laser surgery on her eyes related to the diabetic condition.
The family home at 21 Chris Drive has been put on the market about a year ago with a real estate agent and is listed at $160,000. As indicated above, the plaintiff testified that the agent told them they were about to receive an offer of $140,000.
The plaintiff is claiming an entitlement to the house jointly owned by the parties outright in lieu of periodic alimony, but indicates that if the house is to be divided in some way between the parties, she would be requesting periodic alimony. In addition, the plaintiff is asking the Court to require the defendant to provide medical insurance as available at the defendant's place of employment through the COBRA program for a three-year period at his sole expense. To provide the Court with information with regard to the cost of such an arrangement, the parties have agreed on the record to keep the record open after the trial for the submission of a stipulation on the cost of the same. This stipulation has been considered by the Court.
Both parties are suggesting that the custody of the minor child remain with the plaintiff with rights of reasonable visitation for the defendant during the two-week period until her reaching the age of majority.
The defendant testified on his behalf. He disputed that the extramarital affairs were the cause of the breakdown of the marriage and attributed the breakdown to problems going back over a long period of time in which the parties argued violently. The defendant acknowledged that the arguments worsened in later years. He denied any physical violence. The defendant is 47 years old, in good health, and has a high school education.
With regard to his vocational skills and employability, the defendant has worked for many years as a grocery man. He held several positions at Stop Shop where he worked over a ten-year period, including a period where he ran the night crew. He was eventually elevated to assistant grocery manager. He left that employment voluntarily in 1978 during the marriage of the parties to purchase a Dairy Mart franchise and go into business for himself. The parties, as indicated above, ran a Dairy Mart business in Niantic for about three years and later took over a franchise for Dairy Mart in Norwich. After some financial problems requiring the refinancing of the mortgage on their house, the Dairy Mart in Norwich was closed just prior to the institution of this CT Page 4274 dissolution action. The defendant thereafter took over a Dairy Mart franchise individually in Montville which he ultimately gave back to the company when financial conditions in the neighborhood generally worsened to a point where he was not able to make a profit. This transaction resulted in leaving him with a debt of approximately $7,000 to the Dairy Mart Company (shown on his affidavit as $6,880.17). Thereafter, the defendant has been employed as a manager of a Cumberland Farm, where with overtime, he is able to gross $462.91 weekly. The defendant also claims an expertise in electrical work, and while not licensed, he acknowledges that he could probably pass the test at this time based upon his level of knowledge.
The defendant worked two jobs for some periods during the marriage after their child was born in order to supplement the family income. In addition, the defendant put in considerable physical labor on improvements to the properties jointly owned by the parties.
With regard to the parties' principal asset, the property at Chris Drive, Uncasville, Connecticut, the defendant feels that he equally participated in any increase in the value of the property and made significant contributions in the acquisition, preservation and appreciation in value to the present time. The defendant has asked the Court for an equal division of the property between the parties.
The defendant acknowledges that subsequent to the closing of his business in Montville on May 15, 1991, he made no contributions to the payment on the mortgage and has no information with regard to the plaintiff's claim that she borrowed money from her brother and her mother to pay the interest on the mortgage to keep the bank from foreclosing during this period.
The defendant also itemized various personal property still located at the family residence which he thought should be divided between himself and the plaintiff.
The defendant objects to making insurance payments for the plaintiff; he objects to paying alimony, but would be willing to pay $100 a week towards the expenses of the house until it can be sold.
The defendant does not object to the payment of $93.50 a week support of the minor child in accordance with the child support guidelines worksheet.
Counsel for the parties were given an opportunity CT Page 4275 for argument at the conclusion of the testimony.
The Court has carefully considered the testimony of the parties including their demeanor, attitude, appearance, their credibility, and the factors set forth in sections46b-82 and 46b-81 of the Connecticut General Statutes.
Based upon those considerations and the interrelationship of the various orders the Court makes the following findings and reaches the following conclusions.
The plaintiff, whose maiden name was Joan Butler, and the defendant were married on February 1, 1969 at Branford, Connecticut. The plaintiff has been a resident of Connecticut continuously for at least twelve months before the date of the complaint in this case.
The marriage of the parties has broken down irretrievably and there is no hope of reconciliation.
There is one minor child issue of the marriage, Tracy Tranchida, born May 13, 1974. No other minor children have been born to the plaintiff since the date of the marriage. The State of Connecticut is not contributing to the financial assistance of the parties.
Whereupon it is adjudged that the marriage of the parties to this action be and it is hereby dissolved and they are each hereby declared to be single and unmarried and that the care, custody and education of the minor child, Tracy Tranchida, is hereby committed to the plaintiff subject to the rights of reasonable visitation in the defendant.
The defendant is ordered to pay to the plaintiff for the support of the minor child the sum of $93.50 per week and to maintain for the minor child medical insurance as available to him at his place of employment. The provisions of section46b-84 (c) shall be applicable. The parties shall equally share any unreimbursed medical expenses for the minor child.
The Court finds that the parties are equally responsible for the breakdown of the marriage. The Court further finds that the defendant has a greater opportunity to obtain employment because of his vocational skills and previous employment history and that he therefore has a greater opportunity for the future acquisition of capital and income than does the plaintiff. Also because of the difference in the health of the parties, the defendant is found by the Court to have greater potential for employability and the acquisition of income and capital. The Court finds that each CT Page 4276 of the parties has contributed equally to the acquisition, preservation and appreciation in value of the assets except that subsequent to May 1991, the defendant has defaulted in his obligations with regard to the mortgages on the premises which the plaintiff has met by family borrowing. Also, it is found that the plaintiff is not responsible for the $6,880 obligation the defendant has incurred to Dairy Mart Corporation.
The Court therefore orders that the defendant shall pay to the plaintiff the sum of $75 per week alimony for a period of ten years or until the earlier death, remarriage, or cohabitation of the plaintiff as provided in section 46b-86 (b) of the General Statutes.
The defendant is ordered to make the plaintiff the sole beneficiary of all life insurance available to him at his place of employment up to the amount of $10,000 (as shown on his affidavit) and to maintain that during any period during which alimony is owed as above. The defendant shall provide proof of such beneficiary designation to the plaintiff within thirty days.
The defendant is ordered to cooperate to permit the plaintiff to obtain medical coverage for herself (COBRA) through his place of employment at her sole expense if she elects to do so.
With regard to the jointly-owned real property at 21 Chris Drive, Uncasville, Connecticut, the Court orders that the parties shall cooperate and sign all the necessary documentation to forthwith offer the premises for sale. The Court shall retain jurisdiction for purposes of reviewing the good faith compliance by the parties with this obligation and for the purpose of determining an appropriate sales price should the parties be unable to agree with regard to the same. Upon the sale of the property, after the payment of all liens, encumbrances and the necessary adjustments and expenses, commissions and attorney's fees, the net proceeds shall be disbursed by first repaying the plaintiff the sum of $7,000 which the Court finds was borrowed from relatives to make mortgage interest payments, and then the balance shall be divided 60 percent to the plaintiff and 40 percent to the defendant. During the period of time that the premises are on the market but prior to the sale, the plaintiff shall be responsible for the payment of the household utilities and expenses and shall have the exclusive use of the premises, but the parties shall share equally the costs of the payment of the municipal taxes and the interest on the mortgages and home equity loans to the Farmers Mechanics Bank. CT Page 4277
The plaintiff is ordered to turn over to the defendant the following items of personal property presently located on the property:
All tools in the workshop
Dining room set
One-half of the patio furniture
 One-half of the kitchen utensils, bar accessories and paintings
 All clothing, jewelry and other personal effects previously used by the defendant
Notice of the availability of these items shall be provided to the defendant's attorney by the plaintiff's attorney and the defendant shall be provided with two weeks from such notice to pick up such items at his expense which shall be done in the presence of a third party at a reasonable time agreeable to the plaintiff.
Each party shall be responsible for their own attorney's fees
Each party is ordered to provide the other with current information as to their employment and with a copy of their IRS 1040 within ten days of its filing by certified mail.
Each party is ordered to provide the other with notice by certified mail of their address and telephone number from time to time during any period of time that there is an existing obligation under this judgment.
LEUBA, J.